IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

DAVID CRAFT,

          Plaintiff,

vs.                                      Civil Action No. 1:23-cv-00098

JOHN D. GILLS, individually,
ANDY DAMEWOOD, individually,

          Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983 and the Fourth Amendment to the United States Constitution, arises out of the defendant's commission of federal constitutional violations committed against the plaintiff from and in McDowell County, West Virginia, beginning on or about February 8, 2021 and continuing through about July 28, 2022, within the Bluefield Division of the Southern District of West Virginia.

## INTRODUCTION

1.    On February 8, 2021, the defendant natural resources police officers with the West Virginia Department of Natural Resources, traveled to the Plaintiff's home in North Carolina and seized two sets of trophy-sized deer antlers from Plaintiff's taxidermist, bringing them to West Virginia, where they would be held by defendants until July 28, 2022.

2.    Also on February 8, 2021, while standing in the driveway of Plaintiff's home in North Carolina, Defendant John D. Gills issued several handwritten citations to the Plaintiff,

1

charging him with multiple criminal violations of West Virginia hunting laws pertaining to the two trophy deer whose antlers they seized.

3. On February 26, 2021, Defendant Gills posed for a photograph, holding the two sets of Plaintiff's trophy deer antlers, for a media story in West Virginia Metro News, Outdoor Section. The headline was, "North Carolina Man Faces Serious Poaching Charges in W. Va."



4. The media report alleged that Defendant Gills and his colleagues were "able to come up with photographs and other physical evidence . . . which proved both bucks were killed in West Virginia," as opposed to one of the bucks having been "actually checked in as being killed in North Carolina." Gills further was quoted in the report as stating, "Now, North Carolina investigators are closely watching the West Virginia case and the individual will likely face charges in his home state as well.

2

5. In the media report, Defendant Gills noted that the two sets of deer antlers were of "trophy status," and that the West Virginia legislature had recently increased so-called "replacement costs" for trophy bucks found to have been illegally killed. He stated that "since these two are trophy status, the figures ramp way up" and that "the replacement cost for these two deer, both of which are Pope and Young Record Book caliber, will be in the range of $15,000." Gill called the potential fines "a major weapon to deter poaching of big bucks in his county," implying that Plaintiff was poaching trophy deer in McDowell County, West Virginia.

6. After multiple hearings and requests for continuances from the State, on April 21, 2022, all the charges against Plaintiff were dismissed upon the motion of the prosecuting attorney. The dismissal order noted that the motion was made at the request of Defendant Gills, the investigating officer.

7. On July 28, 2022, the two sets of antlers were finally returned to the Plaintiff. However, the "capes" attached to the antlers were ruined, affecting the ability of a taxidermist to properly mount the trophy antlers.

## JURISDICTION

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

9. Plaintiff David Craft is currently a resident of Mercer County, West Virginia. During all relevant times hereto however, Plaintiff was a resident of the State of North Carolina.

10. Defendant Natural Resources Police Officer John D. Gills was at all times relevant hereto a sworn police officer employed by the West Virginia Department of Natural

Resources, and was at all times relevant hereto acting under color of law. He is named herein in his individual capacity.

11.  Defendant Natural Resources Police Officer Andy Damewood was at all times relevant hereto a sworn police officer employed by the West Virginia Department of Natural Resources, and was at all times relevant hereto acting under color of law. He is named herein in his individual capacity.

## FACTS

12.  McDowell County, West Virginia is one of West Virginia's only bowhunting only counties, having a reputation for thereby growing deer with larger antlers, due to the lack of hunter competition, as would naturally exist with a general gun hunting season in the county.

13.  Defendant John D. Gills is a West Virginia Natural Resources Police Officer tasked with enforcing state wildlife laws within McDowell County. Defendant Andy Damewood is also a West Virginia Natural Resources Police Officer tasked with enforcing wildlife laws within the vicinity of McDowell County.

14.  In the Fall hunting season of 2020, Plaintiff killed two trophy deer - one in McDowell County, West Virginia, as well as one in his home-state of North Carolina. Plaintiff expended a large amount of effort, skill and experience in hunting and successfully taking the two trophy-sized bucks. Both deer were lawfully taken, properly tagged and registered in each respective state. Plaintiff killed the McDowell County deer on private property on which he had permission to hunt at the time the deer was killed. Thereafter, Plaintiff transported both sets of antlers to a North Carolina taxidermist for proper mounting.

15. Plaintiff is originally from McDowell County, West Virginia and has numerous family members in the area. He moved to North Carolina for work. He has since relocated back to West Virginia.

16. On or about late January, 2021, the defendant officers opened a criminal investigation into the Plaintiff after after members of a McDowell County private hunting club apparently saw photos of Plaintiff's hunting success and speculated to the defendant officers that Plaintiff's deer may have been illegally killed on their land by an out-of-state hunter.

17. Upon information and belief, the defendant officers were more concerned with protecting local hunters from out-of-state hunters, than with performing an unbiased investigation into whether any crimes had been committed by the Plaintiff.

18. Moreover, upon information and belief, the defendant officers were additionally concerned with seizing the Plaintiff's trophy antlers themselves, so as to gain notoriety, enrich their employer through increased fines, as well as the ability to display the antlers for the West Virginia Department of Natural Resources, than they were with performing an unbiased investigation into whether any crimes had been committed by the Plaintiff.

19. During their investigation, at no point did the officers obtain evidence that Plaintiff had committed any crime. Nevertheless, they determined to seize the antlers and charge the Plaintiff with numerous wildlife violations, in what amounted to a "charge first and gather evidence later" prosecution strategy.

20. On February 8, 2021, defendants Gills and Damewood traveled to Plaintiff's home in North Carolina, where they met with some North Carolina wildlife officers. Prior to traveling to North Carolina, the defendant officers did not obtain a warrant, or other court order,

authorizing the seizure of Plaintiff's antlers - either in West Virginia or North Carolina. Moreover, neither did the officers seek or obtain an arrest warrant for the Plaintiff - either in West Virginia or North Carolina.

21. Upon information and belief, neither did the North Carolina wildlife officers obtain a warrant or other court order authorizing the seizure of Plaintiff's deer antlers in North Carolina courts. Nor did they ever seek or pursue any criminal charges against the Plaintiff.

22. Nevertheless, Plaintiff's two sets of antlers were seized on February 8, 2021, without his consent, and in the absence of any lawful warrant, court order, or applicable exception. The defendant officers acted maliciously and with knowledge that they were seizing Plaintiff's antlers illegally and without probable cause and a warrant.

23. On February 8, 2021, the defendant officers approached and questioned the Plaintiff in the driveway of his North Carolina home. He answered all of their questions and maintained that he lawfully killed both deer. However, after locating and seizing the antlers at Plaintiff's taxidermist, the defendants returned to Plaintiff's home and issued him multiple handwritten West Virginia citations, including two counts of hunting without permission, in violation of WV Code 20-2-7, two violations of illegal possession of wildlife with enhanced penalties, in violation of WV Code 20-2-4, two violations of hunting without a "class Y permit" in violation of WV Code 20-2-42w, one count of hunting after the legal limit in violation of WV Code 20-1-7(32), one count of "allowed 1 deer with bow" under WV Code 20-1-17(b)(7), and hunting without an "s stamp" in violation of WV Code 20-2-42.

24. Plaintiff was forced to travel from North Carolina to Welch, West Virginia for multiple court appearances for the charges. At the request of the State, the hearings were

continued multiple times due to representations to the court and the parties that the defendant officers were awaiting DNA testing results. However, no verification was ever provided to Plaintiff, or his counsel, that DNA testing had ever been requested, nor occurred.

25. Upon information and belief, the defendant officers were conveying false information to the Court, as well as the Plaintiff, in order to attempt to coerce him into waiving his right to a jury trial, allowing them to keep the Plaintiff's antlers. However, Plaintiff refused to do so, and invoked his demand for a jury trial, which was set to occur in April of 2022.

26. As the trial date approached, the State moved to dismiss all charges so as to avoid the obligation of presenting evidence to a jury. The motion to dismiss filed by the State indicated that the request was done pursuant to the request of the defendant officers.

27. Upon information and belief, the defendant officers were aware that they lacked evidence establishing even probable cause that Plaintiff had committed any wildlife violations, or other crimes under West Virginia law.

28. Several months later, on or about July 28, 2022, Plaintiff's trophy antlers were finally returned to him. Unfortunately however, the "capes" attached to the antlers were ruined while in the State's possession, resulting in a loss of value and loss of the ability to have a taxidermist properly mount the trophy antlers.

29. Despite the initial media story about Plaintiff being an out-of-state poacher who was supposedly facing serious fines and criminal convictions in two different states, no redaction, clarification, or other public statement was made by the defendant officers, or by the West Virginia Department of Natural Resources. Nor was any apology made to the Plaintiff.

## COUNT ONE - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983
## VIOLATION OF THE FOURTH AMENDMENT
**(Malicious Prosecution)**

30. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

31. In the recent Supreme Court opinion in *Thompson v. Clark,* 596 U.S. \_\_\_\_ (2022), the Court clarified the application of malicious prosecution claims under Section 1983. The Court held that a plaintiff in a Section 1983 malicious prosecution claim is not required to show that his criminal prosecution ended with an affirmative indication of his innocence. Rather, a plaintiff only needs to show "that his prosecution ended without a conviction." The charges herein ended without a conviction.

32. Plaintiff was charged and prosecuted for multiple alleged wildlife-related crimes in the Magistrate Court of McDowell County. The charges were filed and prosecuted maliciously and for improper purposes.

33. Defendants knew, and were aware, that the prosecution of David Craft was frivolous and malicious, as evidenced by the fact that they requested dismissal of the charges prior to the jury trial commencing for no obvious reason, other than a lack of evidence. Despite being aware from the very beginning that no probable cause existed to charge and prosecute the Plaintiff, much less convict him, defendants chose to force Plaintiff to undergo over a year of criminal prosecution, with multiple court hearings, before finally dropping the charges.

34. The charges were finally dropped because the defendants had no evidence to present against the Plaintiff. Defendants knew that was the case from the very beginning. Instead, defendants opted to force Mr. Craft to undergo the humiliating process of being prosecuted for

over a year, multiple court hearings, as well as public humiliation in the news media with false allegations and statements about the Plaintiff.

35. The defendant officers violated Plaintiff's Fourth Amendment rights to be free from malicious prosecution. The defendants caused criminal proceedings to be instituted and maintained against the Plaintiff; they did so with malice and without probable cause; the proceeding terminated in Plaintiff's favor and without conviction; Plaintiff was unlawfully seized as a result of the criminal proceedings; defendants' conduct caused Plaintiff's injuries; defendants acted under color of law.

36. Plaintiff suffered damages for which he is entitled to recover.

<u>COUNT TWO - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983</u>
<u>VIOLATION OF THE FOURTH AMENDMENT</u>
**(Unreasonable Seizure)**

37. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

38. Plaintiff's two sets of trophy deer antlers were seized and held by the defendants, beginning on February 8, 2021 and ending on July 28, 2022, when the property was finally returned to the Plaintiff.

39. Plaintiff was at all times relevant hereto the owner of the deer antlers. Though he placed them temporarily in the possession of a taxidermist for mounting, he never authorized or consented to any transfer of possession, or seizure, to the defendant police officers.

40. Plaintiff's deer antlers were seized in North Carolina by the two defendant police officers on February 8, 2021, without a warrant or other court order, being issued from either West Virginia or North Carolina. Accordingly, the initial seizure of Plaintiff's deer antlers were

performed in violation of the Fourth Amendment. No applicable exception to the warrant requirement applies to justify the initial seizure of the antlers by defendants.

41. Even so, "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Jessop v. City of Fresno*, 936 F.3d 937 (9th Cir. 2019); citing *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

42. In *Mom's Inc. v. Willman*, 109 F. App'x 629, 636-37 (4th Cir. 2004), federal agents failed to return the plaintiff's watch after the execution of a search warrant. *Id*. at 633. Relying on the Supreme Court's decision in *United States v. Place*, 462 U.S. 696 (1983), the court reasoned that the Fourth Amendment "regulates all [] interference" with an individual's possessory interests in property, "not merely the initial acquisition of possession." *Mom's*, 109 F. App'x at 637. Thus, because the agents' theft of the watch interfered with the plaintiff's interest in it, "such theft violates the Fourth Amendment." *Id;* see also *Jessop v. City of Fresno*, 936 F.3d 937 (9th Cir. 2019) (holding that officers stealing $225,000 otherwise lawfully seized pursuant to a valid search warrant violates the Fourth Amendment rights of the owner).

43. It was clearly established law on February 8, 2021 that police officers would be in violation of the Fourth Amendment by seizing and holding Plaintiff's personal property (deer antlers) in the absence of a warrant, court order, and/or valid exception to the warrant requirement. See, e.g., *Mom's Inc. v. Willman*, 109 F. App'x 629, 636-37 (4th Cir. 2004).

44. The defendant officers violated Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure. Defendants intentionally committed acts that violated Plaintiff's constitutional right not to have his property unreasonably seized; Defendants conduct caused Plaintiff's injuries; Defendants acted under color of law.

45. Plaintiff suffered damages for which he is entitled to recover.

## **PRAYER**

WHEREFORE, based on the above stated facts, the plaintiffs respectfully requests that this Honorable Court award:

1. Damages against the defendants in an amount to be determined at trial which will fairly and reasonably compensate the plaintiffs for all compensatory damages to be proven at trial;

2. Punitive damages against the individual defendants in an amount to be determined at trial; and

3. Reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

**PLAINTIFFS DEMAND A TRIAL BY JURY**


DAVID CRAFT,
By Counsel


/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com